IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO: 0:14cv60085

MONICA ALBONIGA, individually and on behalf
of A.M., a minor

    Plaintiffs,

v.

SCHOOL BOARD OF BROWARD COUNTY, FLORIDA

    Defendant.
_____/

# COMPLAINT

COMES NOW, MONICA ALBONIGA, individually and on behalf of A.M., a minor and hereby sues Defendant, SCHOOL BOARD OF BROWARD COUNTY, FLORIDA and states as follows:

## NATURE OF CASE

1.    This is an action commenced under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("section 504"), and Title II of the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12132; and their implementing federal and state regulations. In this action, Plaintiff suffered damages and now seeks declaratory and injunctive relief as well as damages.

2.    This Court's jurisdiction is based upon 28 U.S.C. § 1331.

3.    Plaintiff MONICA ALBONIGA (hereinafter ALBONIGA) is a resident of Broward County, Florida. She is a custodial parent, guardian and next friend of A.M., a minor, who also lives in Broward County.

4. Defendant, SCHOOL BOARD OF BROWARD COUNTY, FLORIDA (hereafter referred to as "Defendant" or "Board" is located in Broward County, Florida. The Defendant is considered a public entity under 42 USC § 12131 and a recipient of federal financial assistance.

5. A.M. is a six year old, non-verbal child who lives with cerebral palsy, epilepsy, muscular dystrophy and he is visually impaired. As an infant, A.M. had hydrocephalus and had a shunt inserted, he currently uses a wheelchair, and needs assistance with all activities of daily living.

6. A.M. is a qualified child with a disability under all relevant statutes defining "disability".

7. At all times material, A.M. had an Individualized Education Plan (IEP) as required by the Individuals with Disabilities Education Act. (IDEA)

8. In 2012, A.M. participated in a kindergarten program at ARC Broward, where he had in individualized education program and qualified for special education services.

9. As a result of his epilepsy, A.M. has multiple and unpredictable seizures of various durations.

10. Seizure alert and response dogs that are professionally trained to alert and protect a person who has a seizure due to epilepsy have been long recognized under both federal and Florida law. See 28 C.F.R. § 35.104 (definition of Service Animal); Florida Statute Section 413.08(1)(d).

11. On or about January, 2013 Ms. Ali Kellett, ESE Specialist, ARC Broward, inquired about A.M. obtaining a service animal for his seizures.

12. In March 2013 from Ms. Ali Kellett, ESE Specialist, ARC Broward, advised Wladimir Alvarez, Compliance Specialist, Department of Equal Educational Opportunities

(EEO), and 504 officer, at Defendant for the desire of A.M. to have a service animal for the next school year.

13. On or about this time, Monica Alboniga obtained a service animal for A.M., named "Stevie", and had such do professionally trained to alert prior to a seizure occurring and assist A.M. once a seizure occurs.

14. On or about May, 15 2013, Ms. Monica Alboniga, the Student's parent, spoke with Mr. Alvarez and informed him about her interest of registering her son in a District Elementary school and that she was requesting that her son's service dog be allowed to come to school with him for the 2013-2014 school year.

15. On or about May 23, 2013, the Defendant mailed correspondence to Ms. Alboniga including a copy of a Request for Use of Service Animal in School District Facilities Form.

16. On or about July 22, 2013, the Defendant received a Request for Use of Service Animal in School District Facilities from Ms. Alboniga, including a copy of the service dog vaccinations.

17. At all times relevant, Monica Alboniga obtained all vaccinations and licensing required by the State of Florida necessary for a dog. Further, the service animal has professional and individualized training to assist A.M. with his disability. Further, A.M.'s neurologist from Miami Children's Hospital recommended and prescribed a service animal for A.M.

18. At the time of the request by Ms. Alboniga, the Defendant was developing policies and procedures which far exceeded the requirements for service animals as stated by (1) the Federal Government under the Americans with Disabilities Act and guidance

thereunder (2) the State of Florida under § 413.08, Florida Statutes; and (3) the Florida Department of Education. Such policies are attached as Exhibit "A".

19. By August 15, 2013, Defendants had not agreed to Ms. Alboniga's request for accommodation for her son, but sent her a letter, a few days prior to the August 19th first day of school. Prior to any approval or consideration, the District demanded additional vaccinations and liability insurance for a professionally trained service animal.

   a. The letter demanded a certificate of current liability insurance covering the service animal and identifying the District as an additional insured, with the amount of insurance coverage determined by the District's Risk Management Department.

   b. The letter demanded additional proof of the following vaccinations – Distemper, Hepatitis, Leptospirosis, Paroinfluenza, Parvovirus, Coronatvirus, DHLPPC, and Bordetella). Some of these vaccinations do not even exist.

20. In response to this letter, Ms. Alboniga resorted to calling the WPLG Local 10 News, and the undersigned as the administrative requirements for having a service animal were onerous and impossible, and the school year was about to begin.

21. On August 16, the undersigned wrote a letter to the Board stating that the requirement to provide insurance on an accommodation is illegal pursuant to Florida Law, ADA and Section 504 of the Rehabilitation Act, 28 C.F.R. § 35.180(f), 34 C.F.R. § 104.4(4), 28 C.F.R. § 136(h).

22. After receipt of the letter, and extensive local press coverage, the Board stated that the issue regarding insurance was in error, but still did not revise their policy.

23. However, at 4:25 on August 16, 2013, the Board first insisted that Ms. Alboniga provide a "handler" for the dog. Since Ms. Alboniga nor the dog's trainer had

passed background checks, they could not be the "handler" and as such, the service animal would not be allowed,

24. Ms. Alboniga or the dog trainer volunteered to be the handler until the Board could allow the existing aids to handle the dog, or provide a handler.

25. Notwithstanding the Defendant providing services for children such as toileting, feeding, mobility, and *all* activities of daily living as part of the services offered by the Defendant, the Defendant deemed "handling" of a professionally trained service animal a personal service for which the parent is obligated to provide the service, and it would be a fundamental alteration for the Defendant to provide this service.

26. The undersigned provided actual knowledge to the District, as well as a preliminary injunction in *CC v. Cypress School District*, Case No. 11-352 AG (C.D.CA 2011) demonstrating that barring the dog is a violation of the ADA and Section 504.

27. Due to the extreme pressure asserted by the media, on the first day of school, the Board allowed Ms. Alboniga to be the handler notwithstanding the fact that she did not have official background clearance.

28. After starting school, Ms. Alboniga was provided a list and asked to sign a document entitled "Behavioral Guidelines for Service Animal Handlers in School District Facilities", which included directions of not to interfere with the educational process in the classroom and not to give students (including her own child) food or medication.

29. As such, Ms. Alboniga was required to go to school with her son and just watch the dog. Even though A.M. needs feeding and toiletry assistance, she was not even permitted to assist with non-pedagogical activities of daily living.

30. Immediately after school commenced, Ms. Alboniga demanded a meeting pursuant to Section 504 to ensure that her son was provided adequate accommodations at

Nob Hill Elementary School, such requests for a meeting and accommodations were denied until Ms. Alboniga, though the undersigned filed a complaint with the EEO office for the Defendant.

31. The EEO complaint went to Mr. Wladamir Alvarez, and the meeting was finally scheduled for September 19, 2013.

32. At the Section 504 meeting, the assistance dog and its use was discussed; however, the Defendants refused to put the dogs use or existence in the 504 medical plan of care for A.M.

33. The Board refused to discuss assistance for either an employee of the Baord being a one-on-one aid to handle both A.M. and the dog, or a handler for the dog. The position of the Defendant was the dog was not necessary and was called a "personal service" of A.M.

34. As part of the plan of care, the administration of the suppository medication, Diastat, was discussed at length, as well as the protocol if A.M. has one of his frequent seizures. Ms. Alboniga was concerned that the service animal would not be permitted to do as he was trained, and it could not be discussed. When the importance of the dog during the onset of a seizure was discussed, the attorney for the Board asserted that the dog was "not needed".

35. Further, while all of the school staff, including the school nurse, agreed that Ms. Alboniga should be allowed to assist with feeding of A.M., the attorney for the District refused to allow Ms. Alboniga to assist with any of A.M.'s non-pedagogical activities of daily living.

36. In response to the lack of the service animal within the plan of care, the undersigned demanded that the service animals and its activities be included in the document:

> Please be sure to note in his service plan that the service animal will be allowed to approach Anthony while his is undergoing a seizure, and shall be allowed to keep Anthony safe, lick Anthony, and be otherwise allowed to do what he has been trained to do. Ms. Alboniga was very specific during the 504 hearing as to what Stevie is trained to do. We do not want to be in a position where the dog is hindered in doing items for which he was trained, and as such, it must be allowed into the plan.
>
> This dog has been specifically prescribed by Anthony's neurologist at MCH, and should be included within the plan of care.
>
> Please advise immediately if Stevie will be included within the plan of care, and advise whether the school board intends to provide a "handler" to care for Stevie, or assign a one-on-one to care for both Anthony and his service animal.

37. The response from the Defendant was as follows:

> Mr. Dietz:
>
> The plan of care is the plan for what the District's response is/will be in the case of Anthony having a seizure. It is not a plan of care concerning the dog. Therefore there will be no information concerning the dog in his plan of care.

38. In October, Ms. Alboniga was suddenly advised that her services were no longer needed to be the "handler" for her son's seizure dog. There was no 504 meeting or otherwise regarding this decision. As a result of this statement, the undersigned again inquired, and then was advised that the Defendant made a decision that it was going to train a paraprofessional to be the dog's handler. However, the paraprofessional who was trained resigned and took a position outside the District. As such, Ms. Alboniga was still the "volunteer" handler.

39. Notwithstanding the Defendant training a paraprofessional to be a handler, it has not changed its policies regarding its policies and procedures regarding service animals, to wit:

   a. The Defendant contends that service animals must have liability insurance;

   b. The Defendant contends that service animals must have vaccinations over and above that required by any other animal;

   c. The Defendant contends that Ms. Alboniga is responsible for the "handler" for her son's service animal.

   d. As a handler, Ms. Alboniga cannot even assist with activities of daily living of her son;

   e. The prescribed and professionally trained service animal is not included within the student's Section 504 plan of care.

40. The Board asserts that it is not its responsibility to care for or be responsible for A.M.'s service animal or any service animal. Additionally, the Defendant does not believe a service animal is needed for A.M. to receive FAPE. Therefore, the District believes that any decision to train or hire a paraprofessional to be the handler for A.M.'s service dog is an administrative decision not an educational or accommodation issue under the Americans with Disabilities Act or Section 504 of the Rehabilitation Act..

41. The Defendant has ignored A.M.'s medical needs by entirely disregarding A.M.'s specialist's prescription for the service animal and the services provided by the animal for A.M.

42. The actions of the Board in enacting, implementing, and enforcing such unlawful rules and policies were done in knowing and deliberate indifference to the rights of A.M., Ms. Alboniga, as well as all other persons with disabilities.

43. As a result of the Defendant's actions, the Plaintiff has incurred damages and attorney's fees and costs.

44. Due to the ongoing damages and imminent harm faced by the Plaintiff and A.M., the Plaintiff is entitled to injunctive relief:

    a. A.M. plans on attending Nob Hill Elementary in the future;

    b. A.M. continues to have seizures in the present and the foreseeable future;

    c. Ms. Alboniga is required to be her son's full time "dog handler" as the Board contends that it does not have a responsibility under the law to provide such service;

    d. The Board refuses to detail Stevie's participation in the Section 504 plan of care notwithstanding the doctor's prescription;

    e. The Board continues to assert extraordinarily onerous policies and procedures to dissuade the use of service animals in their facilities.

45. Plaintiff has retained Disability Independence Group, Inc. to represent her in this action and has agreed to pay them their reasonable legal fees and costs.

## COUNT I
## Violation of Title II of the Americans with Disabilities Act,
## 42 U.S.C. § 12131, *et seq.*

46. Plaintiff realleges and incorporates paragraphs 1-45 as though fully set forth herein.

47. The District has and currently is providing educational services to the general public and receiving federal financial assistance and is, therefore, a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131, *et seq.*

48. A.M. has a disability in that he has epilepsy, a mental and physical impairment that substantially limits A.M. daily life activities.

49. A.M.'s mother, Monica Alboniga, requested that A.M. be permitted to bring his service dog, Stevie, to school.

50. A "service animal" is currently defined by the regulations implementing the ADA as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability[.]" 28 C.P.R.§ 36.104. The definition furher specifically states that such tasks include "assisting an individual during a seizure"

51. Stevie is a "service animal" under the ADA because he, among other things, alerts and assists A.M. while he is having a seizure. Stevie has been professionally trained to assist A.M., and has been prescribed to A.M. by his neurologist.

52. The District has failed to provide A.M. with reasonable accommodations by initially denying Stevie access to the School, and then by implementing procedural barriers to the use of Stevie during school.

53. The District is excluding and/or discriminating against A.M. solely on the basis of his disability. As a result of the District's actions with regards to Ms. Alboniga's request for a service dog to accompany A.M. to school, A.M. and Ms. Alboniga has suffered and will continue to suffer extreme hardship and actual and impending irreparable harm.

54. A.M.. has no adequate or speedy remedy at law for the District's conduct described above. Because Defendants' discriminatory conduct is ongoing, declaratory

and injunctive relief against the Defendants are appropriate pursuant to 42 U.S.C. § 12133.

55. Plaintiff is also entitled to recover reasonable attorneys' fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 12205.

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendant, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of the Americans with Disabilities Act permanently enjoining the Defendant from any practice, policy and/or procedure which will deny A.M.. equal access to, and benefit from the Defendant's services, award compensatory damages; reasonable costs and attorneys' fees; and award any and all other relief that may be necessary and appropriate.

## COUNT II

### Claim for Relief Under Section 504 Of The Rehabilitation Act of 1973, 29 U.S.C. § 794

56. Plaintiffs repeat and reallege the allegations in paragraphs one through 45 as if fully set forth herein.

57. The District has and currently is providing educational services to the general public and receiving federal financial assistance and is, therefore, a covered entity within the meaning of the Rehabilitation Act

58. A.M. has a disability in that he has epilepsy, a mental and physical impairment that substantially limits A.M. daily life activities.

59. A.M.'s mother, Monica Alboniga, requested that A.M. be permitted to bring his service dog, Stevie, to school.

60. A "service animal" is currently defined by the regulations implementing the ADA as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability[.]" 28 C.P.R.§ 36.104. The definition further specifically states that such tasks include "assisting an individual during a seizure"

61. Stevie is a "service animal" under the ADA because he, among other things, alerts and assists A.M. while he is having a seizure. Stevie has been professionally trained to assist A.M., and has been prescribed to A.M. by his neurologist.

62. The District has failed to provide A.M. with reasonable accommodations by initially denying Stevie access to the School, and then by implementing procedural barriers to the use of Stevie during school.

63. The District is excluding and/or discriminating against A.M. solely on the basis of his disability. As a result of the District's actions with regards to Ms. Alboniga's request for a service dog to accompany A.M. to school, A.M. and Ms. Alboniga has suffered and will continue to suffer extreme hardship and actual and impending irreparable harm.

64. A.M.. has no adequate or speedy remedy at law for the District's conduct described above. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief against the Defendants are appropriate pursuant to 42 U.S.C. § 12133.

65. Plaintiff is also entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

66. Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated the Plaintiff's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

67. Defendants have acted either intentionally or in deliberate disregard for the protected rights of the plaintiffs herein.

68. As a proximate result of the foregoing, Plaintiff has actual damages.

**WHEREFORE,** Plaintiff respectfully pray that this Court grant the following relief against the Defendant, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act permanently enjoining the Defendant from any practice, policy and/or procedure which will deny A.M.. equal access to, and benefit from the Defendant's services, award compensatory damages; reasonable costs and attorneys' fees; and award any and all other relief that may be necessary and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES FOR WHICH A TRIAL BY JURY IS PERMITTED.**

**Dated this 14th day of January, 2013**

    Respectfully submitted,

    DISABILITY INDEPENDENCE GROUP, INC.
    2990 Southwest 35th Avenue
    Miami, Florida 33133
    Phone (305) 669-2822
    Facsimile (305) 442-4181
    E-Mail: mdietz@justdigit.org

    s/ Matthew W. Dietz
    _____
    MATTHEW W. DIETZ, ESQUIRE
    FL. BAR NO.: 0084905